MARTIN *against* PAYNE.(a)

MARTIN
v,
PAYNE.

THIS was an action of trespass on the case, for debauching and getting with child *Lanah,* the daughter and servant of the plaintiff, by which he lost her service, and was obliged to expend a large sum of money for the expenses of her lying in, &c.

The cause was tried at the *Washington* circuit, in *June,* 1811, before Mr. Justice *Spencer.* At the trial the daughter of the plaintiff was produced as a witness, and proved the seduction, and pregnancy, &c. that at the time of the seduction, which was in the spring of the year 1810, she was 19 years of age, and lived in the house of her uncle, with whom she had resided from the autumn of 1809. She worked for her uncle when she pleased, and was to receive from him, for her work, one shilling per day. She also worked for herself, and expended all her earnings, in clothes and necessaries for herself, as she saw fit. There was no agreement for her continuance in her uncle's house for any particular time; but she went to reside with him, on the terms above mentioned, with the consent of her father. The defendant paid his addresses to her, while she was at her uncle's, and she expected to have married him; and had, at that time, no expectation of returning to her father's house to reside. During the period of her residence with her uncle, she occasionally visited her father's house, remaining there a week at a time. Immediately after she was debauched, she returned to her father, who supported her, and was at the expense of her lying in, &c. It did not appear that the father had done any act dispensing with his daughter's service, other than consenting to her remaining with her aunt.

The defendant's counsel objected, that the plaintiff was not entitled to recover; but the judge, without deciding the question, permitted the cause to go to the jury, who found a verdict for the plaintiff subject to the opinion of the court, on the facts in the case, as above stated.

*Margin headnote:*

A daughter, of the age of 19 years, with the consent of her father, went to live with her uncle, for whom she worked when she pleased, and he agreed to pay her for her work; but there was no agreement for her continuance in his house for any time. While in her uncle's house, she was seduced and got with child, and immediately afterwards, returned to her father's house, where she was maintained, and the expense of her lying in paid by him; tho' had not the misfortune happened to her, she had no intention of returning to her father; it was held that an action on the case for debauching and getting his daughter and servant with child, *per quod servitium amisit,* was maintainable by the father against her seducer; the father not having devested himself of his power to reclaim the services of his daughter; and the *supposed* relation of master and servant was presumed from his right to her services, arising from his liability to maintain and provide for her while under age.

(a) This cause was decided in last *August term,* but accident prevented its insertion in its proper place.

NEW YORK,        *Skinner*, for the plaintiff.    If, at the time of her seduction, the
Oct. 1812.       daughter can be considered as in the service of her father, the ac-
MARTIN           tion is maintainable.    The only evidence to the contrary is the
v.               declaration of the daughter that she did not expect to return to
PAYNE.           her father's house to reside; but this must be taken in connection
with her previous language, that she was courted by the defend-
ant, and expected to be married to him.    The fair inference from
the whole testimony is, that she grounded her expectation of not
returning again to live with her father, on the belief that she was
soon to be married to the defendant.    It cannot, therefore, be said
that here was, in truth, no *animus revertendi*.    This case is clear-
ly distinguishable from that of *Dean* v. *Peel*, (5 *East*, 45.) which
will, no doubt, be relied upon by the defendant's counsel.    Here
the daughter went to live with her uncle, by consent of her fa-
ther, under a contract with the uncle to pay her for her services.
The father was bound to maintain her, and permitted her to go out
to earn wages.    In case her uncle had refused to pay her, the fa-
ther only could have maintained an action against the uncle to re-
cover the wages.    She must, therefore, in presumption of law, be
considered as in the service of her father.    He is responsible for
her maintenance while she is under age, and is, therefore, entitled

* 1 *Bl. Com.*   to her services and earnings.*
446.
The case of *Dean* v. *Peel* is a recent decision of the *English*
court of K. B. and is opposed to the principle of prior adjudica-
tions.    It has no binding authority on this court.

*Henry*, contra.    This is an action for a *loss of service*.    A fa-
ther cannot maintain an action against another for debauching his
† 2 Ld. *Raym.* daughter and getting her with child.†    He can only maintain an
1032.  6 *Mod.*
127. S. C.       action of trespass *quare clausum fregit* for entering his house,
and assaulting and getting his daughter with child, *per quod servi-
tium amisit*.    The only ground on which the action is sustaina-
‡ 3 *Burr.* 1878. ble is a *loss of service;* the rest is matter of aggravation.‡
*Postlethwaite*
v. *Parks.*       The plaintiff must make out an actual and subsisting relation-
ship of *master* and *servant*.    There must be an actual *service*,
and under the paternal roof.    If at the time of the seduction, the
daughter is not in the actual service of her father, he cannot
maintain this action.    The case of *Dean* v. *Peel* is in point.
That case is not new law; it recognises only principles before
settled.    The facts of this case are stronger against maintaining
the action.

NEW-YORK,
Oct. 1812.

MARTIN
v.
PAYNE.

The mere circumstance that the father is legally entitled to the wages earned by his child, will not give him a right to this action. The right of the father to those services is founded on the fact of his protecting and maintaining his child. He is entitled to this action, because he is the protector and guardian of the morals and virtue of his child; but if he suffers her to depart from his house, or withdraws his protection, he has no right to an action. If the daughter remains under his roof and protection, he may maintain an action for entering his house, and debauching her, *per quod servitium amisit,* though the daughter is an adult; but some acts of service, however slight, must be proved, though there need not be a contract of service.*

* 2 *Term Rep.* 166.

*J. Russel,* in reply, insisted, that if the relationship of master and servant existed, either at the time of the seduction, or at the time of the alleged loss of service, the action was maintainable; for the daughter being under age, and having returned to the house of her father, while pregnant, and there lain in, an actual loss of service had accrued. A service, *de facto,* is not necessary to be shown. It is enough that the father is entitled to the services of his daughter, while under age, and has a right to control her conduct. Her secret determination to marry, and not return to her father's house, cannot change the relationship, nor affect his rights. The principle of the decision in *Dean* v. *Peel,* that the daughter had expressed an intention not to return to her father's house, is not founded in reason; and the case of *Postlethwaite* v. *Parks* merely decides that this action is not maintainable where the daughter is of full age, and resides abroad out of her father's house.

SPENCER, J. delivered the opinion of the court. The case of *Dean* v. *Peel* (5 *East,* 49.) is against the action. It was there held that the daughter being in the service of another, and having no *animus revertendi,* the relationship of master and servant did not exist. In the present case, the father had made no contract hiring out his daughter, and the relation of master and servant did exist, from the legal control he had over her services; and although she had no intention of returning, that did not terminate the relation, because her volition could not affect his rights. That is the only case which has ever denied the right of the father to maintain an action for debauching his daughter whilst under age; and I consider it as a departure from all former decisions on this

subject. It has frequently been decided, that where the daugh-ter was more than twenty-one years of age there must exist some kind of service; but the slightest acts have been held to consti-tute the relation of master and servant, in such a case. In *Bennet* v. *Alcott*, (2 *Term Rep.* 166.) the daughter was thirty years of age, and *Buller*, Justice, held that even milking cows was suffi-cient. But where the daughter was over twenty-one, and in the service of another, as in *Postlethwaite* v. *Parks*, (3 *Burr.* 1878.) the action is not maintainable. In *Johnson* v. *M'Adam*, cited by *Topping*, in *Dean* v. *Peel*, *Wilson*, J. said that where the daugh-ter was under age he believed the action was maintainable, though she was not part of the father's family when she was seduced, but when she was of age, and no part of the father's family, he thought the action not maintainable. In *Fores* v. *Wilson*, (*Peake's N. P. Cas.* 55.) which was an action for assaulting the maid of the plaintiff, and debauching her, *per quod*, &c. Lord *Kenyon* held that there must subsist some relation of master and servant, yet a very slight relation was sufficient, as it had been de-termined that when daughters of the highest and most opulent families have been seduced, the parent may maintain an action on the *supposed* relation of master and servant, though every one must know that such a child cannot be treated as a menial servant.

Put the case of a gentleman's daughter at a boarding school, debauched and gotten with child, on what principle can the father maintain the action, but on the *supposed* relation of master and ser-vant, arising from the power possessed by the father to require menial services; for in such a case, there is no actual existing ser-vice constituting the relation of master and servant. Would it not be monstrous to contend that, for such an injury, the law afforded no redress? The case supposed is perfectly analogous to the one before us: here the father merely permitted his daughter to re-main with her aunt; he had not devested himself of his power to reclaim her services, nor of his liability to maintain and provide for her. She was his servant *de jure*, though not *de facto*, at the time of the injury, and being his servant *de jure*, the defendant has done an act which has deprived the father of his daughter's services, and which he might have exacted but for that injury. We are of opinion that the action is maintainable under the cir-

cumstances of this case, and, therefore, deny the motion for a new trial.

NEW YORK,<br>Oct. 1812.

Motion denied.(a)

JACKSON<br>v.<br>STILES.

(a) See *Christian's* observation on this kind of action, 3 *Bl. Com.* 142. note (13). *Selwyn's N. P.* 906. 970. *Peake's N. P. Cas.* 55. 233. 2 *Term Rep.* 4. 5 *Bos. & Pull.* 476. 2 *Caines' Rep.* 219. 3 *Wils.* 18. 3 *Esp. Cas.* 119. 1 *Johns. Rep.* 297.