An adulterous wife has undisputedly engaged in consensual extramarital sexual activity with the couple's marriage counselor. The main opinion enforces the legislative prohibition against a cause of action for alienation of affections,[5] leaving the cuckolded husband without a remedy. I agree fully, albeit reluctantly, with the main opinion.
As the main opinion points out, our Court has declined to permit creative casting of a cause of action to circumvent the prohibition against amatory torts. See D.D. v. C.L.D.,600 So.2d 219, 223 n. 5 (Ala. 1992) ("As this Court recognized in Howton v. Avery, [511 So.2d 173, 174 (Ala. 1987) ], any claim for damages against a third party, no matter how denominated, that is based on allegations of interference with the marriage relationship is barred by §§ 6-5-331[, Ala. Code 1975]."). Since these pronouncements, the legislature has had ample opportunity to amend §§ 6-5-331, Ala. Code 1975, if it saw fit to do so.
An argument could be made that when §§ 6-5-331 was enacted in 1935, the legislature contemplated only the prohibition of claims for damages by a jilted party against a gratuitous interloper, such as a neighbor or a coworker. From there, a court might, if it were so disposed, carve out a "judicial exception" to the statute to cover instances where the interference arises in a setting where, as here, the interloper has assumed a duty to the victim. See the dissenting opinion in Strode v. Pressnell, 38 Ohio St.3d 207,220, 527 N.E.2d 1235, 1246 (1988):
 "As eloquently stated by Judge Cacioppo of the court of appeals in her concurrence and dissent below:
 "`. . . [T]his case does not resemble your garden variety seduction scenario. The wife did not get involved with *Page 255 
the milkman, the mailman or the guy next door. Here, the couple's minister, under the guise of offering pastoral counseling services, abused the trust placed in him. This trust was the raison d'etre
of the relationship. It is also what distinguishes this case from those which the legislature intended to abolish when it did away with amatory actions. This distinction also applies to Strock's claim of misrepresentation — this was not your average lover's ruse.'"
(Sweeney, J., dissenting; emphasis added.)
But we have absolutely no legislative history in Alabama to guide us.[6] Moreover, even if we had legislative history, we could resort to it only when the meaning of a statute was unclear. Garcia v. United States, 469 U.S. 70, 76
n. 3, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984). Here, the legislature has spoken in broad terms, stating: "There shall be no civil claim" for amatory actions. Carving out judicial exceptions to an unambiguous statute violates §§ 43 of the AlabamaConstitution of 1901.[7]
This case presents an interesting analogue to our recent opinion in Hexcel Decatur, Inc. v. Vickers,908 So.2d 237, 240 (Ala. 2005). We there rejected a defendant's invitation to ignore this Court's previous construction of a statute in a setting where the legislature has failed to amend the statute in response to our decisions. Had we accepted the defendant's invitation, we would have closed the door to a plaintiffs recovery. We declined to do so, and the plaintiff had his day in court. Today, we reject a plaintiffs invitation to ignore this Court's previous construction of a statute in a setting where the legislature has failed to amend the statute in response to our decisions. Had we accepted the invitation, we would open a previously closed door. We have declined to do so, and the plaintiff does not have his day in court. While those who applauded our fidelity to precedent on the previous occasion may be disappointed with the result in this case, intellectual honesty requires recognition of consistency, a commodity without which this Court forfeits its credibility.
This Court stated in Alabama State Federation of Laborv. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944), that "[a]ll . . . questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern." I construe this limitation to require that this Court implement legislative policy with which I might personally disagree. But I do not read it to require that I sit mute while we do so. Indeed, on *Page 256 
previous occasions, this Court, while recognizing limitations on judicial authority, has suggested the need for change. See,e.g., Ex parte Perkins, 851 So.2d 453, 455 n. 1 (Ala. 2002) ("As the judicial branch of government, this Court can only interpret the law. We urge the Legislature to expeditiously develop procedures for determining whether a capital defendant is mentally retarded and thus ineligible for execution."); and Etheridge v. State ex rel. Olson,730 So.2d 1179, 1182 (Ala. 1999) ("We note again, as we have done on previous occasions, that a court does not have jurisdiction to interfere in an election result unless a statute authorizes it to do so. The Legislature has made this abundantly clear. See §§ 17-15-6. We strongly urge the Legislature to reexamine §§ 17-22A-21.").
Following a clear legislative command and adhering to the doctrine of stare decisis is not always a pleasant duty for a judge. To be quite blunt, in this case I am holding my nose. The very idea that a marriage counselor who owes a duty to a husband and wife can escape liability for the consequences of his extramarital affair with a party to the marriage is, I respectfully submit, absolutely horrid public policy. Consistent with Alabama State Federation of Labor v.McAdory, I fully recognize that I am not employed by the people of this State to enforce through judicial fiat my personal views of sound legislative policy. If I thought otherwise, I would have voted to affirm the judgment in this case. However, I do take the title of "Justice" to be more than a platitude; I believe it reflects a responsibility to call attention to a situation deserving of further consideration when I deem myself required by my oath to reach a result that is personally offensive. Today is just such an occasion.
If I were a member of the Alabama Legislature, I would immediately amend §§ 6-5-331 so as to provide that nothing in the statute should preclude a civil cause of action when a person who has assumed a duty toward a husband and wife with respect to the status of their marital relationship thereafter has sexual contact, as defined in §§ 13A-6-60(3), Ala. Code 1975,[8] with one of the parties to the marriage during the existence of the marital relationship. I would further provide that the act would apply to all civil actions commenced after it was signed into law and that any such action would be subject to a six-year statute of limitations, running from the latter of the last sexual contact during the marriage or the date of the divorce,[9] so that Faulkner would have his day in court. But I am not a member of the legislature, and I must concur in reversing the judgment in favor of Faulkner.
[5] Section 6-5-331, Ala. Code 1975, states: "There shall be no civil claims for alienation of affections, criminal conversation, or seduction of any female person of the age of 19 years or over."
[6] We do have a contemporaneous explanation offered by this Court in an opinion decided three years after the enactment of the legislature's prohibition against amatory actions. SeeYoung v. Young, 236 Ala. 627, 631, 184 So. 187, 190
(1938):
 "The well known reason for striking down the causes of action named in the act, all growing out of relations between the sexes, was in response to a public sentiment, after wide discussion, to the effect that such actions had been so abused, made the means of exploitation and blackmail, that the existence of such causes of action had become of greater injury than of benefit to society."
[7] Section 43 states:
 "In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
(Emphasis added.)
[8] Section 13A-6-60(3) states: "SEXUAL CONTACT. Any touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party."
[9] The Faulkners were divorced on January 4, 2001.